No. 93-641

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN THE MATTER OF L.F. and D.F.,

Youths in Need of Care.



FILED

SEP 20 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Paul E. Toennis; Oliver, Graves, Toennis &
Gustafson, Billings, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General, Mike
Wellenstein, Ass't Attorney General, Helena, Montana

For Guardian At Litem:

Damon Gannett; Gannett Law Firm, Billings, Montana


Submitted on Briefs:   June 2, 1994

Decided:   September 20, 1994

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Appellant, E.F., appeals the Thirteenth Judicial District Court, Yellowstone County, order which transferred legal custody of her two children to the Department of Family Services (the Department) for six months. We affirm.

The sole issue presented is whether the District Court erred when it concluded that appellant's retention of custody at the present time would likely result in emotional and physical damage to her children.

Appellant is the natural mother of D.F. and L.F. D.F. was born December 12, 1987, and L.F. was born June 6, 1992. The natural fathers of D.F. and L.F. did not participate in the temporary custody proceedings.

Appellant was in a recovery program for alcohol and drug abuse prior to the birth of her son, L.F. Unfortunately, during her pregnancy she relapsed into using sedatives and marijuana. Appellant herself had admitted to the Department that she had taken a valium and smoked marijuana a week before L.F. was born. On June 12, 1992, the Department filed a petition for temporary investigative authority (TIA) to investigate appellant's history of drug use and to monitor the welfare of her children. On June 18, 1992, the District Court granted the TIA and then filed an order for protective services and order to show cause.

D.F.'s foster mother noted unusual behavior for a child of D.F.'s age, and reported these incidents to the Department during

the TIA investigation. Several counselors and doctors observed and examined D.F. Most of the doctors and counselors were in agreement that D.F. was a traumatized, fearful, and confused child. Some conceded that, although there was a possibility that D.F. had been sexually abused, interviewing a four-year-old entails special training and technique to avoid "coaching" the four-year-old into a false confession.

The Department, as part of its stated policy to investigate any "roommate situation," investigated G.M., a man with whom the appellant and her children were residing. D.F. had indicated that she felt uneasy around G.M., and also had made some negative statements to the Department about G.M. that the Department concluded warranted investigation. The appellant and her children had already moved out of G.M.'s home in July, 1992 because the Department had been, as appellant stated, "focusing in on G.M." instead of appellant's drug and alcohol abuse which appellant felt were her real problems. By moving out, appellant felt that the Department would refocus on her addictions and not on G.M. During the Department's investigation of G.M., appellant was made aware that if she moved back in with G.M. she would risk having her children removed from her care. Soon after that admonition from the Department, on August 14, the appellant and her two children were found in G.M.'s home. At that time, the children were temporarily removed from appellant's care and placed in a foster home.

On September 8, 1992, appellant filed an application for order

3

to show cause in the District Court requesting that the Department show cause why her children should not be returned to her physical custody. The District Court, upon stipulation of the parties, extended the initial TIA period another 90 days--until December 9, 1992. On December 10, 1992, the Department filed a petition seeking adjudication of appellant's two children as youths in need of care, temporary custody for six months, and continued authority for foster care placement. Evidentiary hearings were held on these motions and both parties submitted proposed findings of fact and conclusions of law. On June 27, 1993, the District Court granted the Department's request for temporary custody of the children for six months. Appellant appeals.

Did the District Court err when it concluded that appellant's retention of custody of her two children at the present time would likely result in emotional or physical damage to the two children?

Appellant, a Native American, is an enrolled member of the Mandan, Hidatsa, and Arikara Tribes of the Fort Berthold Reservation--also referred to as the Three Affiliated Tribes. Appellant's two children are both enrollable members. In accordance with the Federal Indian Child Welfare Act of 1978, 25 U.S.C. §§ 1901-1963 (ICWA), the Tribes were notified of the proceedings concerning appellant's children. The Tribes filed a motion to intervene in the child custody proceedings pursuant to ICWA, 25 U.S.C. § 1911(c). There is no indication of further involvement on the part of the Tribes in the District Court record. However, because both children are enrollable members of the Three

4

Affiliated Tribes, and the mother is an enrolled member, we apply the ICWA standard for foster care placement of the children.

The applicable standard of review under ICWA for foster care placement of an Indian child is whether clear and convincing evidence exists, including testimony of qualified expert witnesses, to support the determination that "continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(e).

Several qualified doctors and social workers testified about D.F. One of the doctors testified concerning D.F.'s statements that she had been injured by a "hammer" on her "pee-pee" by a man. When shown an anatomically correct picture of a man, D.F. identified the penis of the man in the picture as being a "hammer." She also colored in the vaginal and perianal area on an anatomically correct picture of a girl, indicating that those same areas on her own body were touched by a "hammer." Another doctor, after questioning and observing D.F., concluded that she was a traumatized child, raised in an environment surrounded by violence, chemical abuse, and inconsistent caretakers. This doctor also indicated that D.F.'s statements were, in general, sometimes confusing and "overlaid," and, therefore, her statements concerning the "hammer" hurting her "pee-pee" could possibly be interpreted in other ways that would not indicate sexual abuse. However, regardless of whether sexual abuse had occurred, the majority of D.F.'s doctors and counselors concluded that she was a traumatized child.

5

Appellant selected a counselor to interview D.F. That counselor testified that D.F. was an "unattached" child who desperately needed a stable, secure environment immediately in order to prevent irreparable damage. The foster mother of D.F. and L.F. also testified. She stated that when she first began caring for L.F. his ribs were showing and he vomited after eating. Now he is greatly improved. The foster mother also stated that D.F. still appears to have no concept of belonging with anyone and often "flinches" when people are too physically close to her. One of the social workers testified that, during a visit with appellant, D.F. and L.F., appellant was not attentive to L.F. During that visit L.F. had accidentally hit himself in the mouth with a plastic key and was crying from the pain. Appellant did not respond on her own initiative. The social worker felt the need to comfort L.F., and placed the child in appellant's arms. On another visit, the social worker testified that appellant did not pick up or cuddle L.F. until fifty minutes into the visit.

Appellant's chemical dependency counselor testified that appellant had not completed her aftercare program because appellant could not afford to pay for the entire program. The counselor recommended that another chemical dependency evaluation be performed to assess whether appellant was drug-free since so much time had elapsed since her last evaluation. The counselor testified that because of appellant's relapse during her last pregnancy, it is essential that she complete her aftercare program and be reevaluated.

6

In order to terminate the parental rights of an Indian parent, as distinguished from placing the child in foster care, the evidence must indicate "beyond a reasonable doubt" that the continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child. 25 U.S.C. § 1912(f). When, however, as here, the decision has been made to place the children in foster care for several months rather than terminate the mother's rights, the lesser "clear and convincing" burden is used to protect the best interests of the children. People in Interest of S.R. (S.D. 1982), 323 N.W.2d 885, 886-87. Here, as in Interest of S.R., although the trial court did not specifically state the ICWA standard of proof, we hold that a careful review of the record, including the testimony of several qualified experts, indicates that the "serious emotional or physical damage" requirement of 25 U.S.C. § 1912(e) was proven by clear and convincing evidence. See Interest of S.R., 323 N.W. at 887. Accordingly, we affirm the District Court's conclusion that legal custody of appellant's children be transferred to the Department for a period of six months.

John Conway Harrison
Justice

September 20, 1994

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Paul E. Toennis
OLIVER, GRAVES & TOENNIS, P.C.
P. O. Box 7227
Billings, MT 59103-7227

Marcia Sept
Yellowstone County Attorney's Office
P. O. Box 350250
Billings, MT 59106

Damon Gannett
GANNETT & VENTRELL, P.C.
P. O. Box 1375
Billings, MT 59103-1375

Marjorie Montrose
Department of Family Services
2508 3rd Avenue North
Billings, MT 59101

Hon. Joseph P. Mazurek
Mike Wellenstein, Ass't. AG
Justice Building
Helena, MT 59620

Clarinda Baker
Child Welfare Program
Three Affiliated Tribes
New Town, ND 58763

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA