**30** ■

**In the Interest of W.D.H., III., Appellant.**

No. 14–99–00507–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 15, 2001.

Rehearing Overruled April 19, 2001.

Belinda Johnson Chagnard, Houston, for appellants.

David S. Masquelette, Brian J. Fishcher, Houston, for appellees.

Panel consists of YATES, WITTIG, and FROST, JJ.

## MAJORITY OPINION

YATES, Justice.

Appellant, William Hightower, appeals the termination of the parent-child relationship with his son, W.D.H, III. On appeal, Hightower argues the trial court erred in not applying the standard for the termination of his parental rights as found in the Indian Child Welfare Act of 1978, 25 U.S.C. § 1901, et seq. (1983) ("ICWA"). We agree. Because the trial court did not apply the correct legal standard for the termination of the parent-child relationship, we reverse the judgment of the trial court and remand the case for further proceedings.

## I. BACKGROUND

W.D.H. was born on February 13, 1994. At the time of birth, both W.D.H. and his mother tested positive for crack cocaine. The Texas Department of Protective and Regulatory Services ("TDPRS") removed W.D.H. from the hospital and placed him in a foster home. Hightower's whereabouts were unknown at the time of W.D.H.'s birth. In April 1994, Hightower contacted TDPRS, expressing an interest in W.D.H. Accordingly, TDPRS prepared a family service plan with the long-term goal of reuniting Hightower and W.D.H. Hightower's employment, however, resulted in his being transferred frequently, making it difficult for him to provide a stable environment for W.D.H. Consequently, Hightower advised TDPRS that he wanted W.D.H. placed with appellant's cousin, Darlene Berry. In May 1994, after conducting a home study, an investigator with TDPRS recommended that W.D.H. be placed with Berry. However, for reasons not ascertainable from the record, W.D.H. was not placed with Berry and remained in foster care.[1]

To facilitate regular visits with W.D.H., TDPRS assisted Hightower in getting his work transferred to Houston. In November 1994, just prior to obtaining a residence in Houston, Hightower was convicted of burglary of a habitation and sentenced to twenty-five years in prison. While incarcerated, Hightower advised TDPRS that W.D.H. was one-fourth Indian. At Hightower's request, TDPRS prepared the necessary paperwork to enroll W.D.H. in the Cheyenne–Arapaho Tribe of Oklahoma (the "Tribe").[2] Hightower also advised TDPRS that he wanted W.D.H. placed with the Tribe until he was released from prison. The Tribe expressed a desire to have W.D.H. placed with it. Accordingly, TDPRS changed its family service plan to reflect the goal of

1. In July 1995, Berry contacted TDPRS and indicated that she was interested in having W.D.H. placed with her. Another home study was conducted and overnight visits with Berry were arranged. According to TDPRS caseworker, in late 1995, Berry indicated that she was no longer interested having W.D.H. placed with her. At the termination hearing, Berry disputed this assertion.

2. Hightower is one-half Indian and is also enrolled as a member of the Cheyenne–Arapaho Indian Tribe.

placing of W.D.H. with the Tribe. The Tribe, however, never took custody of W.D.H. TDPRS was also in contact with two members of the Tribe regarding the placement of W.D.H., but those members said that they would not be able to take him. No other members of the Tribe came forward to request placement of W.D.H. In 1996, TDPRS was appointed W.D.H.'s sole managing conservator.

Based on Hightower's representation that he would be released in 1997, TDPRS prepared another family service plan with the long-term goal of reuniting Hightower and W.D.H. Hightower's parole was denied, however, and he was not released in 1997. Because TDPRS was not able to determine when Hightower would be released from prison, it changed its long-term goal of reuniting Hightower and W.D.H. to termination of parental rights and adoption.

In January 1998, TDPRS filed a petition seeking the termination of Hightower's parental rights and sent notice of the termination suit to the Tribe. In July 1998, the Tribe responded to the notice by stating that although it would not intervene in the termination proceedings at that time, it reserved the right to intervene in the future. The termination hearing commenced on November 11, 1998. At this time, the Tribe filed a motion to intervene and entry of appearance. The trial court granted the Tribe's motion and continued the hearing until December 1, 1998. The Tribe, however, did not participate in the hearing and took no further action with regard to the termination proceedings.

On December 18, 1998, the trial court entered a decree for the termination of Hightower's parental rights.[3] The trial court based the termination of the parent-child relationship on the following findings: (1) Hightower knowingly engaged in criminal conduct that resulted in his imprisonment and inability to care for W.D.H. for not less than two years from the date of the filing of the petition, (2) Hightower engaged in conduct which endangered the physical or emotional well being of W.D.H., and (3) it was in the best interest of the child to terminate the parent-child relationship.

## II. APPLICATION OF THE ICWA

■ Although Hightower brings seven points of error in this appeal, we find his second point of error dispositive and, therefore, consider it first. In his second point of error, Hightower challenges the termination of his parental rights on the ground that it was error for the trial court not to apply the standard for the involuntary termination of parental rights found in the ICWA, rather than the standard found in section 161.001 of the Texas Family Code. *See* TEX. FAM.CODE ANN. § 161.001 (Vernon Supp.2000). We agree. Whether the trial court correctly applied the ICWA is a question of law. *J.W. v. R.J.*, 951 P.2d 1206, 1209 (Alaska 1998); *In re I.E.M.*, 233 Mich.App. 438, 443, 592 N.W.2d 751, 754 (1999). In Texas, questions of law are subject to de novo review. *Precast Structures, Inc. v. City of Houston*, 942 S.W.2d 632, 636 (Tex.App.—Houston [14th Dist.] 1996, no writ) (citing *State v. Heal*, 917 S.W.2d 6, 9 (Tex.1996)).[4]

3. The decree also included the termination of the parental rights of W.D.H.'s mother, Diane Johnson. Johnson did not appear at the hearing, but, instead, signed a Mother's Affidavit of Relinquishment of Parental Rights. Johnson is not a party to this appeal.

4. TDPRS contends Hightower has waived his complaint that the trial court applied the incorrect legal standard because he failed to file a request for additional findings of fact. The application of a legal standard, however, is a question of law. A trial court's conclusions of law are always reviewable on appeal. *Wag-*

■ Congress enacted the ICWA in reaction to concerns regarding the effects on "Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 32, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989). In accordance with these concerns, the ICWA " 'seeks to protect the rights of the Indian child as an Indian and the rights of the Indian community and tribe in retaining its children in its society.' " *Id.* at 37, 109 S.Ct. 1597 (quoting H.R. REP. No. 95–1386, at 23 (1978), *reprinted in* 1978 U.S.C.C.A.N. 7530, 7546).[5]

When the court knows or has reason to know an Indian child is involved in a child custody proceeding, then the ICWA applies to the proceeding. 25 U.S.C. § 1912(a); *Doty–Jabbaar,* 19 S.W.3d at

874; *see also In re Adoption of Baade,* 462 N.W.2d 485, 490 (S.D.1990) (stating that applicability of ICWA is contingent only on whether Indian child is subject of child custody proceeding). The ICWA defines an Indian child as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe; . . ." 25 U.S.C. § 1903(4). W.D.H. is enrolled as a member of the Cheyenne Arapaho Tribe. Therefore, the ICWA applies to the termination proceedings in this case. Even the Tribe's failure to intervene in the termination proceedings does not affect the applicability of the ICWA. *Doty–Jabbaar,* 19 S.W.3d at 874; *see also In re L.F.,* 266 Mont. 461, 464, 880 P.2d 1365, 1367 (1994); *In the Interest of P.B.,* 371 N.W.2d 366, 368 (S.D.1985).

To order the involuntary termination of the parent-child relationship in Texas, one

---

goner v. Morrow, 932 S.W.2d 627, 631 (Tex. App.—Houston [14th Dist.] 1996, no writ). Moreover, the trial court was made aware of Hightower's complaints concerning compliance with the ICWA when those complaints were raised during closing argument and in his motion for directed verdict, thus, preserving error. TEX.R.APP. P. 33.1. Additionally, the record establishes that the trial court was aware that the ICWA applied in this case by its attempt to comply with the requirements of the ICWA. *See Doty–Jabbaar v. Dallas County Child Protective Servs.,* 19 S.W.3d 870, 873 (Tex.App.—Dallas 2000, pet. denied) (rejecting Child Protective Services' argument that the mother had not preserved error with respect to the trial court's failure to comply with the requirements of the ICWA where the record demonstrated that the trial court attempted to comply with the requirements of the ICWA).

5. Congressional findings incorporated into the ICWA further reflect these concerns:

Recognizing the special relationship between the United States and the Indian tribes and their members and the Federal

responsibility to Indian people, the Congress finds—

* * *

(3) that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children and that the United States has a direct interest, as trustee, in protecting Indian children who are members of or are eligible for membership in an Indian tribe;

(4) that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions; and

(5) that the States, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families.

25 U.S.C. § 1901 (1983).

of the enumerated statutory grounds must be established by clear and convincing evidence, as well as that termination is in the best interest of the child. TEX. FAM.CODE ANN. § 161.001(1) & (2). Section 1912(f) of the ICWA sets forth the minimum standard for the involuntary termination of parental rights:

> No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

25 U.S.C. § 1912(f) (1983).

■ The trial court in this case combined the requisites of the Family Code and the ICWA by applying the evidentiary standard of "beyond a reasonable doubt" as found in the ICWA to its findings under the Family Code. Therefore, the trial court concluded "beyond a reasonable doubt" that: (1) Hightower had knowingly engaged in criminal conduct that resulted in his imprisonment and inability to care for W.D.H. for not less than two years from the date of the filing of the petition under section 161.001(1)(Q); (2) Hightower had engaged in conduct which endangered the physical or emotional well being of W.D.H. under section 161.001(1)(D);[6] and (3) it was in the best interest of the child to terminate the parent-child relationship under section 161.001(2). The trial court,

however, failed to make a finding, in accordance with 25 U.S.C. § 1912(f), i.e., "that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."[7]

■ The parties do not dispute that the ICWA applies to the termination proceedings at issue; rather, the crux of the dispute is whether the respective termination provisions of the Family Code and the ICWA may be applied simultaneously. TDPRS contends the trial court correctly applied the ICWA and the Family Code. We disagree. First, absent from the trial court's findings and conclusions is a determination, in accordance with 25 U.S.C. § 1912(f), that "the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." The language of the ICWA is clear and unambiguous; parental rights may not be terminated in the absence of such a determination. Therefore, it was error for the trial court not to make this finding. *In re Elliott*, 218 Mich.App. 196, 210, 554 N.W.2d 32, 38 (1996); *Doty–Jabbaar*, 19 S.W.3d at 876.

■ Second, it was error for the trial court to make any findings under the Family Code because the provisions providing for the involuntary termination of parental rights are in conflict with the ICWA. Federal law preempts state law when: (1) Congress has expressly preempted state

---

6. We note that the trial court made this finding in accordance with subsection (D). However, subsection (D) states "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM.CODE ANN. § 161.001(1)(D). Therefore, this particular finding by the trial court should have been in accordance with subsection (E), which provides for termination if the court finds that the parent "en-

gaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *Id.* at § 161.001(1)(E).

7. The custody referred to in 25 U.S.C. § 1912(f) is "legal" custody rather than "physical" custody. *In re Adoption of Baade*, 462 N.W.2d at 490.

law, (2) Congress has installed a comprehensive regulatory scheme in the area, removing the entire field from the state realm, or (3) state law directly conflicts with the force or purpose of federal law. *Cardinal Towing & Auto Repair, Inc. v. City of Bedford, Tex.,* 180 F.3d 686, 690 (5th Cir.1999).

■ Congress has not expressly stated that it was preempting state law concerning child custody proceedings by enacting the ICWA. *In re Brandon M.,* 54 Cal. App.4th 1387, 1396, 63 Cal.Rptr.2d 671, 677 (1997). Nor has Congress intended for the ICWA to occupy completely the area of child custody proceedings. *Id.; In the Interest of D.S.P.,* 166 Wis.2d 464, 473, 480 N.W.2d 234, 238 (1992). Therefore, to find preemption of the involuntary termination provisions set forth in the Family Code, we must find that they are in conflict with the ICWA. There are two types of conflict preemption: (1) it is impossible to comply with both the federal and state law, and (2) the state law stands as an obstacle to the accomplishment and execution of congressional objectives. *Railroad Comm'n of Tex. v. Lone Star Gas Co.,* 844 S.W.2d 679, 694 (Tex.1992) (citing *Northwest Cent. Pipeline Corp. v. State Corp. Comm'n of Kan.,* 489 U.S. 493, 509, 109 S.Ct. 1262, 103 L.Ed.2d 509 (1989)).

The standard provided in section 1912(f), that "the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child," is "notably different" from the standard under the Family Code, which requires the party seeking termination to establish that termination of the

parent-child relationship is in the "best interest of the child." *Doty–Jabbaar,* 19 S.W.3d at 877. Congress was also concerned with the "best interests of Indian children" in enacting the ICWA:

> The Congress hereby declares that it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs.

25 U.S.C. § 1902 (1983). However, the term "best interests of Indian children," as found in the ICWA, is different than the general Anglo American "best interest of the child" standard used in cases involving non-Indian children. *Yavapai–Apache Tribe v. Mejia,* 906 S.W.2d 152, 169 (Tex. App.—Houston [14th Dist.] 1995, orig. proceeding [leave denied] ) (citing *Quinn v. Walters,* 320 Or. 233, 259, 881 P.2d 795, 810 (1994) (Unis, J., dissenting)).[8] Therefore, "[u]nder the ICWA, what is best for an Indian child is to maintain ties with the Indian Tribe, culture, and family." *Id.* (citing *Quinn,* 881 P.2d at 810) (citing *Holyfield,* 490 U.S. at 50 n. 24, 109 S.Ct. 1597); *see also In re Appeal of Pima County Juvenile Action No. S–903,* 130 Ariz. 202, 204, 635 P.2d 187, 189 (1981) (observing that the ICWA "is based on the fundamental assumption that it is in the Indian child's best interest that its relationship to the tribe be protected").

8. *See also* Alissa M. Wilson, *The Best Interests of Children in the Cultural Context of the Indian Child Welfare Act in In re S.S. & R.S.,* 28 Loy. U. Chi. L.J. 839, 847 n.68 (1997) (citing Michael Dale, *State Court Jurisdiction under the Indian Child Welfare Act & the Unstated Best Interest of the Child Test,* 27 Gonz. L.Rev. 353 (1991/92) (depicting the dichotomy between the Anglo "best interest of the child" standard and ICWA "best interest of the Indian child" standard, with the latter encompassing ties to one's own culture)).

■ The requirement under the Family Code that termination of the parent's rights must be in the best interest of the child is based on the "Anglo" standard for determining the best interest of the child. *Yavapai–Apache Tribe*, 906 S.W.2d at 168.[9] When state courts make a determination regarding the best interest of the child, "they obviously consider the factors from their own perspective, that is, an Anglo–American point of view." *Id.; see also In re Custody of S.E.G.*, 521 N.W.2d 357, 363 (Minn.1994) (stating "[t]he best interests of the child standard, by its very nature requires a subjective evaluation of a multitude of factors, many, if not all of which are imbued with the values of majority culture"). Therefore, we conclude that it is not possible to comply with both the two-prong test of the Family Code, which requires a determination of the best interest of the child under the "Anglo" standard, and the ICWA, which views the best interest of the Indian child in the context of maintaining the child's relationship with the Indian Tribe, culture, and family. *See Yavapai–Apache Tribe*, 906

S.W.2d at 170 (stating the ICWA "was specifically directed at preventing the infiltration of Anglo standards" in custody proceedings involving Indian children). Because the best interest of the child, as required by the Family Code, conflicts with the ICWA, the trial court erred in making its determinations regarding the best interest of the child under state law. *Doty–Jabbaar*, 19 S.W.3d at 877.[10]

Moreover, Texas law requires the trial court to make an affirmative finding of at least one of the enumerated statutory grounds, in addition to a finding that termination is in the best interest of the child. *See In the Interest of B.S.T.*, 977 S.W.2d 481, 484 (Tex.App.—Houston [14th Dist.] 1998, no pet.) (stating that to support termination, both elements must be established). Therefore, because the trial court may not make any findings regarding the best interest of the child under state law standards in cases where the ICWA is applicable, it is also error for the trial court to make any findings concerning the enumerated statutory grounds.[11]

---

9. Factors that may be considered when determining the best interest of the child under Texas law include: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976).

10. Courts from other jurisdictions have applied their respective state law standards for termination concurrently with the ICWA, including a determination under state law that termination is in the best interest of the child. *See, e.g., E.M. v. State, Dep't of Health & Soc.*

*Servs.*, 959 P.2d 766, 768–71 (Alaska 1998); *In the Interest of H.A.M.*, 25 Kan.App.2d 289, 295–96, 961 P.2d 716, 721 (1998); *In re Denice F.*, 658 A.2d 1070, 1073–74 (Me.1995). None of these cases, however, address the differences between the best interest of the child under the "Anglo" standard and the best interest of the Indian child in the historical context and purpose of the ICWA. This court has previously analyzed and recognized those differences. *Yavapai–Apache Tribe*, 906 S.W.2d at 168–70. Furthermore, the Dallas Court of Appeals has also recognized the difference between the two standards and found it was error for the trial court to apply the best interest of the child standard under the Family Code, rather than determining that continued custody by the Indian parent would result in emotional or physical danger to the child. *Doty–Jabbaar*, 19 S.W.3d at 877.

11. TDPRS contends that the higher evidentiary burden of the ICWA should be applied to state law grounds for termination, rather than

In sum, it was error for the trial court to terminate Hightower's parental rights in the absence of a finding that "continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child" in accordance with 25 U.S.C. § 1912(f). Moreover, because the Family Code provisions for involuntary termination of parental rights are in conflict with the ICWA and, thus preempted by it, it was improper for the trial court to base its findings regarding termination on the Family Code. Hightower's second point of error is sustained.

### III. NOTICE TO THE TRIBE

In his third point of error, Hightower contends the trial court erred in conducting the termination hearing because the Tribe did not receive proper notice of the termination suit in accordance with the ICWA. The ICWA provides, in relevant part, that:

> . . . where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. . . . No foster

care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or Secretary: *Provided,* That the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding.

25 U.S.C. § 1912(a) (1983) (emphasis in the original).

■ As a preliminary matter, TDPRS contends that Hightower does not have standing to challenge the adequacy of notice to the Tribe of the termination suit. To the contrary, the ICWA specifically confers standing on a parent to petition a court to invalidate a termination proceeding upon showing that notice requirements have not been satisfied. 25 U.S.C. § 1914. This is true in cases where the parent challenges the adequacy of notice to the Indian tribe. *See In re Pedro N.,* 35 Cal. App.4th 183, 190, 41 Cal.Rptr.2d 819, 824 (1995) (involving mother's claim that social services department gave inadequate notice of termination proceedings to Indian tribe); *In re M.S.S.,* 86 Wash.App. 127, 134–35, 936 P.2d 36, 40, *review denied,* 133 Wash.2d 1008, 943 P.2d 663 (1997), *cert. denied sub nom., Sather v. Washington,* 523 U.S. 1098, 118 S.Ct. 1564, 140 L.Ed.2d

the "clear and convincing evidence" standard set forth in the Family Code. Even if we were to find that Texas law setting forth the grounds for termination is not preempted by the ICWA, we do not agree with TDPRS's contention. Other courts have found a dual burden of proof properly applies where state law provides for termination under a "clear and convincing" evidentiary standard in addition to the "beyond a reasonable doubt" standard of the ICWA; that is, the "beyond a reasonable doubt" standard does not apply to state law termination grounds. *See, e.g., In re J.R.B.,* 715 P.2d 1170, 1172 (Alaska 1986); *In re Bluebird,* 105 N.C.App. 42, 47–48, 411

S.E.2d 820, 823–24 (1992); *In re Dependency & Neglect of N.S.,* 474 N.W.2d 96, 99–100 (S.D.1991); *K.E. v. State,* 912 P.2d 1002, 1004–05 (Utah App.1996). *But see Laurie R. v. New Mexico Human Servs. Dep't,* 107 N.M. 529, 535, 760 P.2d 1295, 1301 (Ct.App.1988) (observing that New Mexico statute expressly provides for utilizing "beyond a reasonable doubt" evidentiary standard to state law grounds for termination in cases where ICWA is applicable and that "clear and convincing" evidentiary standard is utilized in cases where ICWA is not applicable). It should be noted that the state law provisions in those cases were found not to be preempted by the ICWA or preemption was not otherwise at issue.

798 (1998) (involving father's challenge to adequacy of notice provided to Indian tribe regarding termination proceedings). We conclude that Hightower has standing to challenge the adequacy of the notice provided to the Tribe.

■ A review of the record, however, establishes that the Tribe received notice of the termination suit in accordance with section 1912(a). The record shows that when TDPRS filed the petition for termination of Hightower's parental rights in January 1998, it sent a copy of the petition with an "Amended Notice to Cheyenne Arapaho Tribe" by registered mail, return receipt requested, advising the Tribe of its right to intervene and of the next scheduled hearing in July 1998, as required by the ICWA. Hightower, however, claims that neither the copy of the notice to the Tribe filed with the court nor the copy of the notice admitted into evidence at the termination hearing had a copy of the termination suit attached as "Exhibit B," as stated in the notice. In July 1998, the Tribe acknowledged TDPRS's compliance with the notice requirements of the ICWA in the following response:

> We have determined the above named child(ren) is an enrolled member(s) of the Cheyenne–Arapaho Tribe. The Indian Child Welfare Program will not intervene in the following proceedings, however we would like to reserve our right to intervene should that become necessary in the future.
>
> We sincerely want to thank you for keeping in accordance [sic] with the Indian Child Welfare Act. . . .

By its reply and express refusal to intervene, it appears the Tribe did, in fact, receive a copy of the petition to terminate Hightower's parental rights. We conclude TDPRS complied with the notice requirements of the ICWA in initially notifying the Tribe of the termination suit.

■ Hightower further asserts the Tribe was not notified that its motion to intervene and entry of appearance, filed on November 12, 1998, had been granted or that the hearing had been continued until December 1, 1998. The record shows that on September 24, 1998, TDPRS served the Tribe with a notice of trial setting for November 11, 1998, and on November 17, 1998, an amended notice of trial setting for December 1, 1998. When the hearing continued on December 1, the Tribe did not appear. Although the record establishes that the trial court orally granted the motion, it does not contain a written order granting the Tribe's motion to intervene. Nor is there any indication in the record that the Tribe was notified that its motion to intervene had been granted. The Tribe, however, took no further action with regard to its intervention in the termination proceedings, such as requesting additional time to prepare for the hearing, and has not otherwise complained of the trial court's having conducted the termination hearing without its involvement.

In the absence of any complaint by the Tribe, we cannot conclude that any alleged failure to notify the Tribe that its motion to intervene had been granted, particularly in light of the Tribe having been served with the amended notice of trial setting, actually harmed Hightower. Therefore, Hightower's third point of error is overruled.

## IV. Conclusion

In view of our determination that the Family Code's termination provisions are preempted by the ICWA, it is not necessary to address Hightower's other points of error challenging the trial court's findings under the Family Code. Having sustained Hightower's second point of error, we reverse the judgment of the trial court and remand the case to the trial court for proceedings consistent with this opinion.

WITTIG, Justice.

My colleagues competently and accurately describe the predominance of the Indian Child Welfare Act over certain standards of the Texas Family Code. However, I would more narrowly construe the federal preemption in accordance with, and because of, the *in pari materia* doctrine. When two statutes address the same matter or subject, they should be construed, to the extent possible, in harmony. *Findlay v. State*, 9 S.W.3d 397, 399 (Tex.App.— Houston [14th Dist.] 1999, no pet.); *Click v. Tyra*, 867 S.W.2d 406, 407 (Tex.App.— Houston [14th Dist.] 1993, orig. proceeding).

The courts and practitioners cannot escape the majority's studied conclusion that the Indian Child Welfare Act requires-for involuntary termination of parental rights (1) a determination beyond a reasonable doubt that (2) the continued custody of the child is likely to result in serious emotional or physical damage to the child. 25 U.S.C. § 1912(f). Similarly, the courts and practitioners must be alerted to other provisions of the Act requiring, for example, (3) expert testimony concerning the serious emotional or physical damage to the child. *Id.; Doty–Jabbaar v. Dallas County Child Protective Serv.*, 19 S.W.3d 870, 877 (Tex. App.—Dallas 2000, pet. denied). However, I would not hold, as does the majority, that it was error for the trial court to make findings under separate Texas statutory grounds or that (all) Family Code provisions, are in conflict with the ICWA.

Clearly, it is sufficient for us to hold that the Indian Child Welfare Act heightened standard of serious emotional or physical damage, proven beyond a reasonable doubt, trumps the lesser Family Code standard of "best interests of the child" proven by clear and convincing evidence. But for this court to hold that a factfinder could not ever conclude that indefinite imprisonment (over two years to life without parole or even capital punishment), and inability to care for a child could never meet the heightened Indian standard is incorrect. Likewise, to hold, as the trial court here did, that endangerment of the physical or emotional well-being of the child could never meet the heightened ICWA standard is likewise incorrect. The "best interests" Texas standard is simply lower than the "serious emotional or physical damage" standard. If the heightened Indian standard is met, beyond a reasonable doubt, a factfinder could logically and correctly include *other* aspects of the Family Code as grounds for termination.

The majority discusses, at footnote 10, sister states that concurrently apply state law and the ICWA. This, I believe is the correct approach, so long as the application of state criteria meet or exceed the heightened ICWA requirements. State law and federal law should be read *in pari materia.*