# NO. 12-19-00375-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF M.R., L.W.,* | § | *APPEAL FROM THE* |
| *J.R., D.R., A.R., A.M., A.M., AND P.R.,* | § | *COUNTY COURT AT LAW NO. 2* |
| *CHILDREN* | § | *ANGELINA COUNTY, TEXAS* |

## PER CURIAM ORDER

R.R. appeals the judgment of the trial court appointing permanent managing conservators of her children, L.W.1,[1] D.R., A.M.1,[2] A.M.2, and P.R. We abate this appeal and remand the case to the trial court with instructions.

## BACKGROUND

R.R. is the mother of L.W.1, D.R., A.M.1, A.M.2, and P.R.[3] L.W.1's and D.R.'s father is L.W. A.M.1's, A.M.2's, and P.R.'s father is A.M. On April 25, 2018, the Department of Family and Protective Services (the Department) filed an original petition for protection of L.W.1, D.R., A.M.1, A.M.2, and P.R., for conservatorship, and for termination of R.R.'s parental rights. The Department was appointed temporary managing conservator of the children, and R.R. and the fathers of the children were granted limited access to, and possession of, the children.

On November 1, 2019, the trial court entered a final order in suit affecting the parent-child relationship regarding A.M.1, A.M.2, and P.R. only. The trial court appointed the Department as

---

[1] The father and child have the same initials. We will refer to the child as L.W.1.

[2] The father and two of his children have the same initials. We shall refer to the children as A.M.1 and A.M.2.

[3] R.R. is the mother of three other children who were a part of the initial suit, M.R., J.R., and A.R. On November 1, 2019, the trial court ordered a "monitored return" of these children to R.R.'s home. The trial court ordered that the Department continue to serve as temporary managing conservator of the children. The children, M.R., J.R., and A.R., are not a part of this appeal.

permanent managing conservator of the children, and appointed the mother, R.R., and father, A.M., as possessory conservators with possession of, and access to, the children. On the same date, the trial court entered a final order in suit affecting the parent-child relationship regarding L.W.1 and D.R. only. The trial court appointed fictive kin, J.E., as permanent managing conservator of the children, and appointed the mother, R.R., and father, L.W., as possessory conservators with possession of, and access to, the children. The court found that J.E., as a nonparent appointed as permanent managing conservator, had the rights and duties specified in Section 153.371 of the Texas Family Code, including the right to designate the primary residence of the children. Further, L.W. was ordered to pay child support for L.W.1 and D.R. This appeal followed.

## INDIAN CHILD WELFARE ACT

In her first issue on appeal, R.R. argues that the trial court erred by failing to give proper notification pursuant to the Indian Child Welfare Act (ICWA) and failed to determine if the children, L.W.1, D.R., A.M.1, A.M.2, and P.R., are Indian children under the ICWA. In our review of the record, in the May 1, 2018 adversary hearing, L.W., father of L.W.1 and D.R., stated that all of his "father's people are Cherokee," although he admitted to having no contact with the Cherokee tribe. He said that a few family members in Mississippi were connected to the Cherokee tribe. R.R., the children's mother, stated that she was not sure what tribe her relative, possibly referring to her mother or grandmother, was a member of, but she knew the relative was a member of a tribe. A.M., father of A.M.1, A.M.2, and P.R., stated that his family was approximately thirty percent Blackfoot, a tribe from Oklahoma.

Further, in a June 6, 2018 status report, a September 27, 2018 permanency report, and a September 13, 2019 permanency report, the "box" indicating the children's American Indian statuses was checked. The reports explained that (1) L.W.1's and D.R.'s "possible American Indian child status [was] reported by [L.W.], and is yet to be determined," and (2) A.M.1's, A.M.2's, and P.R.'s "possible American Indian child status [was] reported by [A.M.] and is yet to be determined." However, in the January 25, 2019 permanency report to the court, the "box" indicating the children's American Indian status was checked, explaining that both fathers denied the children's American Indian status. The record does not show that the children's Native American status was determined prior to trial, and the order of termination makes no reference to the issue.

2

Congress passed the ICWA[4] in response to the "rising concern in the mid–1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 32, 109 S. Ct. 1597, 1599–1600, 104 L. Ed. 2d 29 (1989); *see also In re W.D.H.*, 43 S.W.3d 30, 34 (Tex. App—Houston [14th Dist.] 2001, pet. denied). The ICWA applies to all state child custody proceedings involving an Indian child when the court knows or has reason to know an Indian child is involved. 25 U.S.C.A. § 1912(a) (Westlaw current through PL 116-91); *In re R.R., Jr.*, 294 S.W.3d 213, 217 (Tex. App.—Fort Worth 2009, no pet.). "Child custody proceeding" means, and includes, foster care placement, termination of parental rights, preadoptive placement, and adoptive placement. 25 U.S.C.A. § 1903(1) (Westlaw current through PL 116-91). "Foster care placement" means any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated. *Id.* § 1903(1)(i) (Westlaw current through PL 116-91). An Indian child is defined by the ICWA as an "unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C.A. § 1903(4) (Westlaw current through PL 116-91). The ICWA, however, does not define what constitutes being a "member" or "being eligible for membership." *See* 25 U.S.C.A. § 1903(4). Each tribe has its own criteria for determining tribe membership. *See In re R.R., Jr.*, 294 S.W.3d at 217-18.

The Bureau of Indian Affairs created guidelines for state courts to use in Indian child welfare proceedings implementing the ICWA. *See* BUREAU OF INDIAN AFFAIRS GUIDELINES FOR STATE COURTS AND AGENCIES IN INDIAN CHILD CUSTODY PROCEEDINGS, 80 FED. REG. 10146 (Feb. 25, 2015). Specific instructions are provided in the Guidelines for the determination of the status of an alleged Indian child. *See In re J.J.C.*, 302 S.W.3d 896, 900 (Tex. App.—Waco 2009, no pet.). "State courts, in every child custody proceeding, must ask whether the child is or could be

---

[4] In *Brackeen v. Bernhardt*, 937 F.3d 406 (5th Cir. 2019), the Fifth Circuit reversed the federal district court's ruling that declared provisions of ICWA and the 2016 administrative rule implementing it unconstitutional. *Id.* at 416. The Fifth Circuit found that ICWA was constitutional and, therefore, the 2016 administrative rule implementing ICWA was valid. *Id.* at 441. On November 7, 2019, the Fifth Circuit granted rehearing en banc.

an Indian child and conduct an investigation into whether the child is an Indian child." BIA GUIDELINES, 80 FED. REG. at 10152. Further, the Guidelines provide that "[a]n agency or court has reason to believe a child involved in a child custody proceeding is an Indian child if: (1) Any party to the proceeding . . . informs the agency or court that the child is an Indian child [or] (2) Any agency involved in child protection services or family support has discovered information suggesting that the child is an Indian child." *Id*.

Under the ICWA, an Indian tribe is entitled to notice of a custody proceeding involving an Indian child. *See* 25 U.S.C.A. § 1912(a). It is the duty of the trial court and the Department to send notice in any involuntary proceeding "where the court knows or has reason to know that an Indian child is involved." 25 C.F.R. § 23.11 (Westlaw current through Jan. 23, 2020 issue). Section 23.11 also requires that the notice be sent to the "appropriate Regional Director" and the Secretary of the Interior. *Id*. § 23.11(a), (b), (c). Upon receiving the notice, the Secretary of the Interior or his designee is obliged to make reasonable documented efforts to locate and notify the tribe and the child's Indian parent or custodians within fifteen days or to notify the trial court how much time is needed to complete the search for the child's tribe. *Id*. § 23.11(c). A violation of the ICWA notice provisions may be cause for invalidation of custody or termination proceedings at some later, distant point in time. *See* 25 U.S.C.A. § 1914 (Westlaw current through PL 115-68) (providing that "[a]ny Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent . . . from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title"); *see also **In re W.D.H.***, 43 S.W.3d at 38-9 (recognizing parent of Indian child has standing to challenge adequacy of notice even though tribe declined to join suit).

As noted above, L.W. stated during the adversary hearing that all of his "father's people are Cherokee," and indicated that some members of his family in Mississippi were connected to the tribe. A.M. said during the adversary hearing, that his family was thirty percent Blackfoot, a tribe from Oklahoma. R.R., the mother of the children, indicated that a female relative was a member of a Native American tribe. This constitutes information discovered by a state licensed agency involved in child protection services that suggests L.W.1, D.R., A.M.1, A.M.2, and P.R. may be Indian children, which is sufficient to trigger the ICWA's requirements for notification and determination of Indian status. *See **In re J.J.C.***, 302 S.W.3d at 901 (holding trial court had reason

4

to believe children were Indian children because DFPS discovered maternal grandmother was alleged to be a member of the Chippewa Indian Nation); *In re R.R., Jr.*, 294 S.W.3d at 222 (holding trial court had reason to believe children were Indian children when mother testified that grandmother was a registered member of Kiowa Indian Nation). Therefore, the trial court was obligated to notify the Indian tribe or tribes for an inquiry into the children's Indian status. *See In re R.R., Jr.*, 294 S.W.3d at 219 (noting that the Guidelines listed circumstances "shall trigger an inquiry by the court and petitioners"). The notice provisions of the ICWA are mandatory. *See* BIA GUIDELINES, 80 FED. REG. at 10152 (providing that courts must ask whether a child is or could be an Indian child and conduct an investigation into whether the child is an Indian child). Here, there is no record that the trial court provided proper notice that complied with the statutory notice requisites of the ICWA; that the Secretary of the Interior made reasonable documented efforts to locate and notify the children's tribe, Indian parents, or Indian custodians; that the Secretary notified the trial court of the results of its efforts to locate the children's tribe; or that the trial court conducted a hearing to determine whether the children, L.W.1, D.R., A.M.1, A.M.2, or P.R., were Indian children under the ICWA. *See* 25 C.F.R. § 23.11(c); BIA GUIDELINES, 44 FED. REG. at 67,586.

Because the inquiry required by ICWA is necessary here, we *abate* this appeal and *remand* this case to the trial court. Accordingly,

It is ORDERED that the County Court at Law #2 of Angelina County, Texas shall within **forty-five (45)** days, (1) provide proper notice that complies with the statutory notice requisites of the ICWA; (2) conduct a hearing to determine whether L.W.1, D.R., A.M.1, A.M.2, and P.R. are Indian children under the ICWA; and (3) cause a record of the proceedings to be prepared and make appropriate findings as to whether L.W.1, D.R., A.M.1, A.M.2, and P.R. are Indian children.

It is FURTHER ORDERED that a supplemental clerk's record, including any order and findings resulting from the ICWA hearing, be certified to this Court within **fifteen (15) days** of the ICWA hearing. The supplemental clerk's record shall also include findings that the Secretary of the Interior made reasonable documented efforts to locate and notify the children's tribe, Indian parents, or Indian custodians, and notified the trial court of the results of its efforts.

Ordered entered January 31, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

5