

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00313-CV

———————————————

IN THE INTEREST OF A.M. AND A.B., CHILDREN

———

On Appeal from the 322nd District Court
Tarrant County, Texas
Trial Court No. 322-679210-20

———

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Justice Wallach

**MEMORANDUM OPINION AND ABATEMENT ORDER**

Appellants T.B. (mother) and B.B. (father) appeal the trial court's final order terminating their parental rights to A.B. (Alan) and appointing Appellee the Texas Department of Family and Protective Services as permanent managing conservator.[1] T.B. and B.B. both argue that the trial court erred by failing to comply with the mandatory notice provisions of the Indian Child Welfare Act (ICWA). This court and the Department agree.

Because the trial court here had reason to know that Alan might be subject to the ICWA, specific statutory notices containing specific statutorily defined information were required to be sent to specific individuals. And although the Department sent out some notices, those notices did not comply with the statutory requisites. Moreover, the Department neglected to send out other required notices. Accordingly, we will abate this appeal and remand this case to the trial court so that proper notice may be provided to the proper individuals and so that, after such notice, the trial court may conduct a hearing and make a determination as to whether Alan is an Indian child under the ICWA.

In another issue, B.B. argues that the evidence is legally insufficient to support the termination order because the trial court did not meet the ICWA requirements.

---

[1]We use aliases to refer to the child and his family members. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

We need not address B.B.'s legal sufficiency challenge because it is dependent on the trial court's resolution of the ICWA notice issue. *See* Tex. R. App. P. 47.1.

T.B. also appeals the termination of her parental rights to A.M. (Anna), her child from another relationship. Because we hold that T.B. lacks standing to challenge alleged errors that could only affect Anna's post-termination conservatorship, we do not consider this argument.

## I.      Background

On February 3, 2020, the Department filed a petition requesting the termination of B.B.'s and T.B.'s parental rights.[2] A few days later, T.B. and B.B. executed caregiver resource forms. Both indicated that they believed Alan was of American Indian descent or heritage—specifically Shawnee or Cherokee.[3] A few weeks later the trial court executed an agreed temporary order as to T.B. only. In the order, the trial court made a finding that Alan was Shawnee or Cherokee.

The Department subsequently sent a "Notice of Pending Custody Proceeding Involving Indian Child" regarding Alan to the three Cherokee Indian tribes— Cherokee Nation, United Keetoowah Band of Cherokee Indians in Oklahoma, and the Eastern Band of Cherokee Indians. The record does not contain a similar notice

---

[2]The petition also requested the termination of Anna's father J.M.'s parental rights to Anna.

[3]In the Department's permanency report to the trial court, the Department stated that T.B. denied that Anna is American Indian.

for the Shawnee tribe. The Cherokee Nation submitted a letter to the Department stating that its records do not reflect that Alan is an "Indian child" in "relation to the Cherokee Nation as defined in the Federal Indian Child Welfare Act." The record does not contain a response from either the United Keetoowah Band of Cherokee Indians in Oklahoma or the Eastern Band of Cherokee Indians.

The trial court conducted a trial in July and September of 2021. B.B. was not present at the trial. The trial court subsequently ordered T.B.'s and B.B.'s parental rights terminated.[4] The trial court did not make any findings under the ICWA.

## II. ICWA

Congress enacted the ICWA in 1978. Indian Child Welfare Act of 1978, 25 U.S.C.A. §§ 1901–63. The federal legislation was passed in response to the "rising concern in the mid–1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 32, 109 S. Ct. 1597, 1599–1600 (1989); *see also In re W.D.H.*, 43 S.W.3d 30, 34 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). The ICWA provides a variety of procedural and substantive protections in child custody proceedings involving Indian children. *In re R.R.,* 294 S.W.3d 213, 227 (Tex. App.—

---

[4]The trial court also terminated J.M.'s parental rights. J.M. has not appealed the termination.

4

Fort Worth 2009, no pet.). It sets out minimum requirements with which a state court must comply before terminating parental rights in a case involving an Indian child. *See* 25 U.S.C.A. § 1912(a); *Doty–Jabbaar v. Dallas Cnty. Child Protective Servs.,* 19 S.W.3d 870, 874 (Tex. App.—Dallas 2000, pet. denied). No termination of parental rights may be ordered in such a proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of a qualified expert witness, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child. *See* 25 U.S.C.A. § 1912(f).

An Indian child is defined by the ICWA as an "unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." *Id.* § 1903(4). The ICWA applies when an Indian child is involved regardless of the tribe's participation in the proceeding. *W.D.H.,* 43 S.W.3d at 34; *Doty–Jabbaar,* 19 S.W.3d at 874.

When a state court has reason to know a child involved in a child custody proceeding might be subject to the Act, the court shall seek verification of the child's status from either the Bureau of Indian Affairs or the child's tribe. *See* BIA Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67,584, 67,586 (Nov. 26, 1979). A court has reason to know that a child is subject to the Act when "[a]ny party to the case, Indian tribe, Indian organization or public or private agency informs the court that the child is an Indian child." *Id.*

Once the trial court knows or has reason to know that an Indian child is involved in a termination of parental rights suit, the petitioner must notify the Indian tribal entities by registered mail with return receipt requested. 25 U.S.C.A. § 1912(a). Substantial compliance with these notice provisions will not suffice. *R.R.*, 294 S.W.3d at 224. Once proper notice is given in compliance with the dictates of the ICWA, however, if the tribe fails to respond or if the tribe intervenes but fails to determine the child's membership or eligibility for membership in the tribe, the burden shifts to the party asserting the child's status as Indian to show that the ICWA applies. *Id.* at 226.

The trial court's application of the ICWA is a question of law, which we review de novo. *See W.D.H.*, 43 S.W.3d at 33.

### III. Application of Law to the Present Facts

T.B. and B.B. argue that the trial court erred by terminating their parental rights to Alan because the Department did not satisfy the mandatory notice requirements of ICWA when it had reason to know that Alan is subject to the Act.[5] The Department's notice lists the Cherokee Nation, Eastern Band of Cherokee Indians, and United Keetoowah Band of Cherokee Indians in Oklahoma. And the notice contains a certificate of service. The notice, however, is silent with respect to the manner of

---

[5]The ICWA specifically confers standing on a parent to petition a court to invalidate a termination proceeding upon showing that notice requirements have not been satisfied. 25 U.S.C.A. § 1914. This is true in cases where the parent challenges the adequacy of notice to the Indian tribe. *W.D.H.*, 43 S.W.3d at 38–39.

service. Moreover, the record does not reflect that the Department served the required notice upon any of the three federally recognized Shawnee tribal entities. *See* BIA Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 86 Fed. Reg. 7554-01 (Jan., 29, 2021).

We agree with T.B., B.B., and the Department that the trial court failed to satisfy the ICWA's mandatory notice requirements when it had reason to know that Alan may be subject to the ICWA, and thus, that it erred in signing the termination order. 25 U.S.C.A. § 1912. We sustain T.B.'s first issue and B.B.'s second issue claiming that the trial court erred in entering the termination order without first satisfying the requirements of ICWA. We therefore need not address B.B.'s first issue arguing that the evidence is legally insufficient to support the termination order. *See* Tex. R. App. P. 47.4.

### IV. T.B.'s Lack of Standing

T.B. further argues that if we remand this case to the trial court to satisfy the requirements of the ICWA as to Alan, we should also remand this case as to Anna because it is in the best interest of Alan and Anna to stay together.[6] T.B.'s request is one that affects only Anna's post-termination conservatorship. T.B. has not appealed the trial court's findings supporting terminating her rights to Anna and is therefore bound by those findings. *See In re S.C.*, No. 02-18-00422-CV, 2019 WL 2455612, at

---

[6]T.B. does not claim that Anna is of American Indian descent or heritage.

*4 n.2 (Tex. App.—Fort Worth June 13, 2019, pets. denied) (mem. op.). T.B. has consequently become a former parent with no legal rights regarding Anna. *See id.*; *see also* Tex. Fam. Code Ann. § 161.206(b). With no legal rights regarding Anna, T.B. lacks standing to challenge alleged errors that could only affect post-termination conservatorship. *See In re Y.V.*, No. 02-12-00514-CV, 2013 WL 2631431, at *1– 2 (Tex. App.—Fort Worth June 13, 2013, no pet.) (mem. op) (holding former father did not have standing to appeal post-termination custody decision when he did not appeal the termination of his parental rights); *see also In re A.N.A.*, No. 05-18-00169- CV, 2018 WL 2228624, at *1 (Tex. App.—Dallas May 16, 2018, no pet.) (mem. op.) (citing same). Because T.B. does not have standing to challenge Anna's conservatorship, we do not have subject matter jurisdiction over this argument. And we therefore do not address it. *See In re T.Y.*, No. 05-18-00287-CV, 2018 WL 3130652, at *1 (Tex. App.—Dallas June 25, 2018, pet. denied) (mem. op.).

## V.  Conclusion

Having sustained T.B.'s first issue and B.B.'s second issue, we abate this appeal and remand this case to the trial court so that notice regarding Alan may be sent in compliance with the ICWA, as outlined above. *See R.R.*, 294 S.W.3d at 237; *see also In re J.J.C.*, 302 S.W.3d 896, 902 (Tex. App.—Waco 2009, no pet.) (holding that when proper notice is not provided under the ICWA, the court of appeals must remand the case to the trial court so that proper notice may be provided). We further direct the trial court to enter findings of fact and conclusions of law regarding whether Alan is

8

subject to the ICWA and to include them in a supplemental clerk's record to be filed with the clerk of this court. *See* Tex. R. App. P. 35.3(c).

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  February 3, 2022