Affirmed and Opinion filed _____________, 2002
















Affirmed and Opinion filed October 3, 2002.                                                   

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00157-CV 


____________

 

IN THE INTEREST OF
A.N.




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



On Appeal from the 313th District Court 

                                                           Harris
 County, Texas                       

Trial Court Cause
No. 00-01268J




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



O P I N I O N

            Appellants challenge the termination
of their parental rights to their child, A.N. 
The child was born on February
 11, 2000, one month after R.N. (the child’s natural father) began
serving a three-year prison sentence for burglary.  Before that, the Texas Department of Protective
& Regulatory Services (“the Department”) had placed the couple’s other two
children in foster care.  Because of
these developments and the failure of A.M. (the child’s natural mother) to
follow the Department’s parenting recommendations with regard to her other
children, the Department also took custody of A.N. shortly after the child’s
birth.  

After removing A.N., the Department prepared a family service
plan designed to educate A.M. and R.N. on proper parenting techniques, detailing
various tasks for them to accomplish to regain custody of A.N.  The Department sent the information to R.N.
in prison but received no response from him. 
After A.M. completed the plan, the Department returned A.N. to her.  However, six weeks later the Department again
removed A.N. alleging serious health and safety risks.  The Department returned A.N. to foster care
and sought termination of the parent-child relationship.  A jury was waived, and after trial the court
granted termination.  Finding sufficient
evidence to support the judgment, we affirm.

Standard of Review

A trial court may order involuntary termination upon clear
and convincing evidence of an enumerated statutory ground, see Tex. Fam.
Code. § 161.001(1), and if
termination is in the best interest of the child, see id. § 161.001(2).  In
re W.D.H., 43 S.W.3d 30, 34-35 (Tex. App.—Houston
[14th Dist.] 2001, pet.denied).  A.M. challenges the factual sufficiency of
the latter, while R.N. challenges the factual sufficiency of the former.  We view all the evidence to determine whether
a reasonable factfinder could form a firm belief or conviction that the
Department established the grounds for termination.  In the
Interest of C.H., 45 Tex.
Sup. Ct. J. 1000, 2001 WL 1903109, at *1 (Tex.
July 3, 2002).

 A.M. (Mother)

            In her sole point of error, A.M.
argues that the evidence is factually insufficient to support the finding that
she engaged in conduct or knowingly placed the child with persons who engaged
in conduct that endangered the physical or emotional well-being of the child.  See Tex. Fam. Code
§ 161.001(1)(E).  She does not challenge
the trial court’s finding that termination is in the child’s best interest.

JoAnn Trchalek, office manager of
the daycare the child attended during the six weeks she was in A.M.’s care, testified that the infant’s physical
appearance and hygiene worsened over this time. 
She testified that her clothes were not washed, her fingernails became dirty
and long, her ears and nose were not cleaned, and she developed a recurring
lice problem that A.M. appeared unable to address.  She also found bruises on the inside of the
child’s legs and red marks on her chest and shoulders.  Kino Lewis, the child’s care worker, also
testified that A.N. was “filthy” and “smelled bad” while under A.M.’s care.

Dr. So Peen Chin, a pediatrician with Texas Children’s
Hospital in Houston, Texas
testified A.N. looked sad when he saw her September 19, 2001, the day she was removed again from A.M.’s care.  He
testified that her hair was matted and contained nits and lice, her nose and
mouth were surrounded with dried and crusted mucus, her fingernails were dirty,
and her buttocks and lower back were caked with dry feces.  But Dr. Chin was most concerned about A.N.’s four
to six ounce weight loss since his examination six weeks earlier, a significant
amount considering the child weighed less than twenty pounds and should have
been gaining six to eight ounces per
month.

Dr. Amanda Norris, a clinical psychologist who saw A.M.,
testified that she appeared to be a loving parent who was very focused on her
children, but that she also denied any responsibility for A.N.’s
condition.  She was uncertain as to A.M.’s ability to change her behavior, and doubted her
ability to take care of a two-year-old child.

Also admitted in evidence was a petition filed by R.N. in August
of 2001, in which he argued that A.M. was a prostitute, had an alcohol and drug
abuse problem, and possessed poor parenting skills.  Because they were later reconciled, R.N. refused
to discuss the petition at trial.  

In her testimony, A.M. admitted she intended to continue her
relationship with R.N. when he was released from prison, despite his history of
repeated incarceration, drunkenness, and complete lack of involvement with his
children by other women.  

On appeal, A.M. asserts only that the evidence was factually
insufficient because the weight loss was not her fault.  But A.M.’s own
sister testified she did not feed her other children appropriately.  Moreover, A.M. challenges none of the additional
evidence supporting the court’s finding. 
Clearly, unsanitary conditions can be sufficient to endanger the
physical or emotional well-being of a child.  See In re M.C., 917 S.W.2d 268, 270
(Tex.1996).  

We hold there was factually sufficient evidence for a
reasonable factfinder to reach a firm belief that A.M. endangered the
well-being of A.N.  A.M.’s
point of error is overruled.

R.N. (Father)

            In his appeal, R.N. concedes that
his criminal conviction and confinement resulted in inability to care for A.N.
for at least two years. [1]  See Tex Fam. Code § 161.001(1)(Q).  In his sole point of error, he argues
the evidence is factually insufficient to show that termination was in her best
interest.  Tex Fam. Code § 161.001(2).

            Several factors may be considered in
determining a child’s best interest, including the child’s desires, the child’s
emotional and physical needs, the emotional and physical danger to the child,
the parental abilities of and programs available to assist the individual
seeking custody, the plans for the child by the individual seeking custody, the
stability of the home, the acts or omissions of the parent that indicate an
improper existing parent-child relationship, and any excuses for the parent’s
acts or omissions.  See Holley v. Adams,
544 S.W.2d 367, 371-72 (Tex.1976).  This list
is not exhaustive, and proof of every factor is not required.  See In
the Interest of C.H., 45 Tex.
Sup. Ct. J. 1000, 1006, 2001 WL 1903109, at *9 (Tex.
July 3, 2002). 

            R.N. argues that his current incarceration
affects his “availability” but not his “ability” to parent, one of the factors
listed above.  But this is merely one
factor out of several in a non-exhaustive list. 
The Department presented evidence of several others.

R.N. is currently incarcerated for burglary of a building
with intent to commit theft.  He testified
that the charge was originally for capital murder, but he did not know his four
co-defendants were going to kill their landlord.  He admitted he knew what he did was wrong,
but described his involvement (while A.M. was seven and a half months pregnant
with A.N.) as “not a big issue.”

Previously, R.N. had been convicted of burglary of a motor
vehicle, as well as aggravated assault. The latter was committed in front of
his oldest child with A.M.  Stemming from
a disagreement over use of the telephone, R.N., who had been drinking, cut the
telephone line and threatened A.M.’s brother with a
knife.  According to Janet Wrench, A.M.’s sister, R.N. shoved Wrench’s mother into a
dishwasher and pushed Wrench into the dryer during the aggravated assault.  

Before his conviction and prison sentence, R.N. did nothing
to provide for A.M.’s medical care during pregnancy,
and since the conviction and incarceration has not been involved in parenting A.N.  A.M. testified that he did nothing to help
care for their other children before A.N. 
Similarly, R.N. testified that he had two children from relationships
prior to A.M., but did not know where one lived, and felt it was best not to
“mess” with the other.

            A.M. testified that R.N. drank
everyday from the time he awoke to the time he went to bed.  R.N. himself testified he could drink up to
four cases of beer a day and admitted to drinking and driving.  Nonetheless, R.N. testified that he did not
feel he had a drinking problem, and could quit any time he chose.

            R.N. relies almost exclusively on
his own testimony that he plans to be involved with A.N. upon release.  But he failed to outline any concrete plans to
provide for her financial, medical, emotional or physical care.  He merely testified that he felt that it was
better for his family to stay together.  

            We find this evidence is factually
sufficient to support a finding that termination of the parent-child
relationship was in A.N.’s best interest.  See In
the Interest of C.H., 45 Tex.
Sup. Ct. J. at 1007-1008 (reversing finding of factual sufficiency because
court of appeals did not explain why it discounted evidence of parent’s
incarceration, previous criminal history, failure to arrange for prenatal medical
care, failure to provide postnatal emotional and financial assistance, lack of
a concrete plan for emotional and physical care, and unawareness of the
whereabouts of a child from a prior marriage). 
R.N.’s point of error is overruled.

Conclusion

The evidence was factually sufficient to terminate the
parent-child relationships of appellants A.M. and R.N.  The judgment is affirmed.

 

                                                                        

                                                            /s/        Scott Brister

                                                                        Chief
Justice

 

Judgment
rendered and Opinion filed October 3,
 2002.

Panel
consists of Chief Justice Brister and Justices Hudson and Fowler.

Do
Not Publish — Tex. R. App. P. 47.3(b).

 











[1] The
Department’s petition was filed in February 2000, and R.N.’s
confinement continues through December 2002.