# NO. 12-20-00201-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE* |
| *R.J., R.I. AND R.I.,* | § | *COUNTY COURT AT LAW NO. 1* |
| *CHILDREN* | § | *HENDERSON COUNTY, TEXAS* |

## MEMORANDUM OPINION

D.A. appeals the termination of her parental rights. In two issues, she contends the trial court erred in failing to grant her motion for extension and failed to comply with the Indian Child Welfare Act (ICWA). We affirm.

## BACKGROUND

D.A. is the mother of R.I.1, R.I.2, and R.J. R.I.1's and R.I.2's father is R.I.3. R.J.'s father is B.J. R.I.2 also had an alleged father, D.C., who was served but did not respond. On August 6, 2019, the Department of Family and Protective Services (the Department) filed an original petition for protection of R.I.1, R.I.2, and R.J., for conservatorship, and for termination of D.A.'s parental rights.[1] The Department was appointed temporary managing conservator of the children.

At the conclusion of a trial on the merits, the trial court found, by clear and convincing evidence, that D.A.'s parental rights should be terminated. The trial court further found, by clear and convincing evidence, that D.A. had engaged in one or more of the acts or omissions necessary to support termination of her parental rights under subsections (D), (E), and (O) of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the

---

[1] The Department also sought and obtained termination of B.J.'s and R.I.3's parental rights to the children. However, they are not parties to this appeal.

parent-child relationship between R.I.1, R.I.2, R.J. and D.A. was in the best interest of the children. Based on these findings, the trial court ordered that the parent-child relationship between R.I.1, R.I.2, R.J. and D.A. be terminated. This appeal followed.

MOTION FOR EXTENSION

In her first issue, D.A. argues that the trial court abused its discretion in failing to grant her motion for extension of the court's jurisdiction.

**Standard of Review and Applicable Law**

We review a trial court's decision to grant or deny an extension of the dismissal date under an abuse of discretion standard. *In re A.J.M.*, 375 S.W.3d 599, 604 (Tex. App.—Fort Worth 2012, pet. denied). When the Department files a suit requesting termination of the parent-child relationship, the trial court must dismiss the suit on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the Department as temporary managing conservator unless the court has commenced the trial on the merits or granted an extension. *See* TEX. FAM. CODE ANN. § 263.401(a) (West Supp. 2020). A court may not maintain the suit on the court's docket after the one year dismissal date unless the court finds that extraordinary circumstances necessitate the child's remaining in the temporary managing conservatorship of the Department and that continuing the appointment of the Department as temporary managing conservator is in the best interest of the child. *See id.* § 263.401(b). If the court makes those findings, the court may retain the suit on the court's docket for a period not to exceed 180 days after the one-year dismissal date. *See id.*

"The focus is on the needs of the child, whether extraordinary circumstances necessitate the child remaining in the temporary custody of the Department, and whether continuing such is in the best interest of the child." *In re A.J.M.*, 375 S.W.3d at 604. Failure to begin complying with a family service plan until several weeks before trial court does constitute an extraordinary circumstance when the requirements necessary to obtain the return of the child were known well in advance of that time. *In re O.R.F.*, 417 S.W.3d 24, 42 (Tex. App.—Texarkana 2013, pet. denied). Further, when a parent, through her own choices, fails to comply with a service plan and then requests an extension of the statutory dismissal date in order to complete the plan, the trial court does not abuse its discretion by denying the extension. *See In re K.P.*, No. 02-09-00028-CV, 2009 WL 2462564, at *4 (Tex. App.—Fort Worth Aug. 13, 2009, no pet.) (mem.

2

op.). Actions that are considered to be the parent's fault will generally not constitute extraordinary circumstances. ***In re J.S.S.***, No. 10-19-00102-CV, 2019 WL 4511483, at *3 (Tex. App.—Waco Sept. 18, 2019, pet. denied) (mem. op.).

**Analysis**

D.A. urges that the trial court abused its discretion in denying her motion for an extension. She claims that her court-ordered inpatient treatment amounts to an "extraordinary circumstance" because it prevented her from completing her family service plan. We disagree.

The evidence at the hearing showed that D.A. had a prior Department case in 2016 due to her methamphetamine use. R.I.1 and R.I.2 were removed from her possession at the onset of that case. D.A. participated in an inpatient treatment program for eight months during that case. The children were returned to her, and the case was dismissed while she was residing at the treatment center.

Lindsey Mason, a Department caseworker, testified that D.A. is not in compliance with the current service plan and did not enter rehab until June 16, 2020. Mason testified that when she spoke with D.A., D.A. related that she entered treatment because the trial court ordered her to attend and failed to mention anything about changing her life. Mason further testified that D.A. failed to obtain sobriety after participating in substance abuse counseling with two separate counselors. In addition, all of D.A.'s hair follicle tests during the case were positive for methamphetamine and amphetamine.

At the conclusion of the hearing, the trial court denied the motion and explained its reasoning:

> I don't see as regarding [D.A.] where an extraordinary circumstance would be in this case. I believe she just spent eight or nine months not doing services and now she's saying whoops, it's the end of the case, let's get it finished up. The comment that was made to the caseworker about the only reason she's in rehab is because the Judge ordered it says a whole lot. And I don't have any contradictory testimony to that.

Based on the record before the trial court, we conclude that D.A.'s inpatient treatment was not an "extraordinary circumstance." The evidence demonstrates that D.A. was aware of the requirement she refrain from methamphetamine use to retain custody of her children before the onset of the present case. In addition, it appears that D.A.'s failure to enter a rehabilitation facility until several months into the case was a result of her own actions. *See **In re J.S.S.***, 2019

WL 4511483, at \*3; ***In re K.P.***, 2009 WL 2462564, at \*4. Therefore, the trial court did not abuse its discretion by denying D.A.'s motion for extension of the one-year dismissal date. We overrule D.A.'s first issue.

**INDIAN CHILD WELFARE ACT**

In her second issue, D.A. argues the trial court erred by failing to give proper notification pursuant to the ICWA and failed to determine if the children are Indian children under the ICWA.

**Applicable Law**

Congress passed the ICWA[2] in response to the "rising concern in the mid–1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." ***Miss. Band of Choctaw Indians v. Holyfield***, 490 U.S. 30, 32, 109 S. Ct. 1597, 1599–1600, 104 L. Ed. 2d 29 (1989); *see also* ***In re W.D.H.***, 43 S.W.3d 30, 34 (Tex. App—Houston [14th Dist.] 2001, pet. denied). The ICWA applies to all state child custody proceedings involving an Indian child when the court knows or has reason to know an Indian child is involved. 25 U.S.C.A. § 1912(a) (Westlaw current through PL 116-188); ***In re R.R., Jr.***, 294 S.W.3d 213, 217 (Tex. App.—Fort Worth 2009, no pet.). "Child custody proceeding" means, and includes, foster care placement, termination of parental rights, preadoptive placement, and adoptive placement. 25 U.S.C.A. § 1903(1) (Westlaw current through PL 116-188). "Foster care placement" means any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated. ***Id***. § 1903(1)(i). An Indian child is defined by the ICWA as an "unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." ***Id***. § 1903(4). The ICWA, however, does not define what constitutes being a "member" or "being

---

[2] In ***Brackeen v. Bernhardt***, 937 F.3d 406 (5th Cir. 2019), the Fifth Circuit reversed the federal district court's ruling that declared provisions of ICWA and the 2016 administrative rule implementing it unconstitutional. ***Id***. at 416. The Fifth Circuit found that ICWA was constitutional and, therefore, the 2016 administrative rule implementing ICWA was valid. ***Id***. at 441. On November 7, 2019, the Fifth Circuit granted rehearing en banc. *See* ***Brackeen v. Bernhardt***, 942 F.3d 287 (5th Cir. 2019).

eligible for membership." *See id*. § 1903(4).  Each tribe has its own criteria for determining tribe membership.  *See **In re R.R., Jr.***, 294 S.W.3d at 217-18.

The Bureau of Indian Affairs created guidelines for state courts to use in Indian child welfare proceedings implementing the ICWA.  *See* Bureau of Indian Affairs Guidelines for State Courts and agencies in Indian Child Custody Proceedings, 80 Fed. Reg. 10146-02 (Feb. 25, 2015).  Specific instructions are provided in the Guidelines for the determination of the status of an alleged Indian child.  *See **In re J.J.C.***, 302 S.W.3d 896, 900 (Tex. App.—Waco 2009, no pet.).  "State courts, in every child custody proceeding, must ask whether the child is or could be an Indian child and conduct an investigation into whether the child is an Indian child."  BIA Guidelines, 80 Fed. Reg. at 10152.  Further, the Guidelines provide that "[a]n agency or court has reason to believe a child involved in a child custody proceeding is an Indian child if: (1) Any party to the proceeding . . . informs the agency or court that the child is an Indian child [or] (2) Any agency involved in child protection services or family support has discovered information suggesting that the child is an Indian child."  *Id*.

Under the ICWA, an Indian tribe is entitled to notice of a custody proceeding involving an Indian child.  *See* 25 U.S.C.A. § 1912(a). It is the duty of the trial court and the Department to send notice in any involuntary proceeding "where the court knows or has reason to know that an Indian child is involved." 25 C.F.R. § 23.11 (Westlaw current through Nov. 12, 2020 issue).  Section 23.11 also requires that the notice be sent to the "appropriate Regional Director" and the Secretary of the Interior.  *Id*. § 23.11(a), (b), (c).  Upon receiving the notice, the Secretary of the Interior or his designee is obliged to make reasonable documented efforts to locate and notify the tribe and the child's Indian parent or custodians within fifteen days or to notify the trial court how much time is needed to complete the search for the child's tribe.  *Id*. § 23.11(c).  A violation of the ICWA notice provisions may be cause for invalidation of custody or termination proceedings at some later, distant point in time.  *See* 25 U.S.C.A. § 1914 (Westlaw current through PL 116-188) (providing that "[a]ny Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent . . . from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title"); *see also **In re W.D.H.***, 43 S.W.3d at

5

38-9 (recognizing parent of Indian child has standing to challenge adequacy of notice even though tribe declined to join suit).

**Application**

In the current case, the trial court relied on notices sent to the Indian Tribes during the 2016 case when making its ICWA determination. D.A. contends this constitutes error because the Department and the trial court had reason to know that Indian children were involved because she claimed to be of Cherokee and Choctaw descent. We disagree.

In the 2016 case, D.A. claimed that R.I.1 had Cherokee, Choctaw, and Sioux ancestry. Allegedly, the Sioux ancestry originated from R.I.1's father, and the Cherokee and Choctaw ancestry originated from D.A. And in the present case, D.A. again claimed to have Cherokee and Choctaw ancestry. No mention of any other Native American heritage from the children's fathers was mentioned in the present case.

At trial, the Department notified the trial court that the Native American ancestry claims in the present case are the same as the 2016 case because D.A. claimed both Cherokee and Choctaw heritage in each case. The Department further reported that three Cherokee and three Choctaw tribes were notified in the 2016 case, and five tribes sent denial letters. A denial letter from the sixth tribe was obtained the morning of trial stating that the children were ineligible for membership and were not considered Indian children under the ICWA.

Mason testified that the children were identified as having possible Cherokee and Choctaw heritage. And she confirmed that the ICWA notice was sent to the required tribes during the 2016 case. Mason testified that five tribes replied to those notices with letters denying the children's eligibility under the ICWA. Mason further identified the letter she received from the sixth tribe stating that the children are not Indian children under the ICWA. Mason stated that, to her knowledge, D.A.'s membership and eligibility have not changed since 2016:

> Q. So since the 2016 case where -- where these tribes were notified, to your knowledge has [D.A.] indicated to you that she's joined a tribe or become a member of a tribe or been deemed eligible to become a member of a tribe?
> A. No, sir, not to my knowledge.
> Q. And has she notified you that any of her family members have joined a tribe, been deemed eligible for a tribe or anything of that nature since the 2016 case?
> A. No, sir.

6

No other evidence regarding changes in D.A.'s membership eligibility or status was admitted. Mason testified that she was aware that the Department previously filed a notice of ICWA compliance in the case. As a result, Mason asked the trial court to find that the ICWA does not apply to R.I.1, R.I.2, and R.J.

At the conclusion of trial, the trial court found that the children were not Indian children under ICWA:

> In -- in looking at how it was all structured, there were numerous tribes in the 2016 case 3 and, I believe, based on what I saw there was, approximately, 24 responses from various tribes in the 2016 case which included the Apache tribes, the Sioux tribes, Cherokee, in fact all the Cherokee and all the Choctaw tribe except the Jena tribe that was, you know, received in this case.
>
> And while I think the Department should have done better and should have done it by the book I'm going to find that based on those responses that there is a -- at least a good codal [sic] argument that there is no reason to believe there is Indian heritage because it's already been denied once.
>
> . . .
>
> So I am going to find that in this particular case that ICWA is not implicated based on the fast [sic] that I do not believe that it is reasonable to assume that there is Indian heritage in this particular case. That being said, I'm not discounting anything regarding the Department and their attempts to -- to do that.

Additionally, at a later hearing, the trial court reaffirmed its ruling on the ICWA issue:

> But as my findings previously, and I am going to make those findings again today, is that the allegations in this particular case were that they were Cherokee and Choctaw heritage. All three of the tribes for Choctaw and the three tribes for Cherokee have responded in the prior case that there were not Indian heritage for these children with those tribes. Also, a significant number of the other tribes, the Sioux and the Apache have also responded as having no Indian heritage. Therefore, I do not find it reasonable to consider these children as Indian children. I will make a finding that based on the evidence that we have, that the Indian Child Welfare Act is not going to apply in this particular case because these children do not qualify as Indian children. And I will make that specific finding.

The determination by a trial court that a child is not a member of that tribe, or is not eligible for membership in that tribe, or that the biological parent is not a member of the tribe is conclusive. *In re A.W.*, 590 S.W.3d 68, 71 (Tex. App.—Texarkana 2019, pet. denied). Furthermore, the ICWA does not apply simply based on an allegation of tribal ancestry; there must be a political relationship with a federally recognized Indian Tribe. Indian Child Welfare Act Proceedings, 81 Fed. Reg. 38778-01, 38792 (June 14, 2016). Because the tribes at issue had previously determined that the children were not eligible for membership based on D.A.'s

assertion of Native American heritage, and no evidence demonstrated that D.A.'s status with the tribes had changed, the children are not Indian children under the ICWA. As a result, the trial court properly found that R.I.1, R.I.2, and R.J. are not Indian children under the ICWA and the notice requirements were not triggered by the new case. We overrule D.A.'s second issue.

### DISPOSITION

Having overruled D.A.'s first and second issues, we *affirm* the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered November 30, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 30, 2020**

**NO. 12-20-00201-CV**

**IN THE INTEREST OF  R.J., R.I AND R.I., CHILDREN**

Appeal from the County Court at Law No. 1

of Henderson County, Texas (Tr.Ct.No. FAM19-0571-CC1)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*