

# NUMBER 13-22-00587-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF M.S.P. AND A.C.A., CHILDREN

### On appeal from the 343rd District Court
### of San Patricio County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Silva and Peña
Memorandum Opinion by Justice Silva**

The Texas Department of Family and Protective Services (the Department) brought suit to terminate the parental rights of Mother[1] to her two children M.S.P. and A.C.A.[2] The trial court terminated the parent-child relationship on six of the termination

---

[1] The Department also brought a termination suit against the children's individual fathers, but neither father appeared at trial, and neither is a party to this appeal.

[2] We use aliases to refer to the children and their family members. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

grounds alleged by the Department. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D)–(G), (N), (O). On appeal, Mother argues that the trial court failed to comply with the notice provisions under the Indian Child Welfare Act (ICWA), *see* 25 U.S.C. § 1912(a), and that the trial court abused its discretion by denying her oral motion for continuance. We affirm.

## I. INDIAN CHILD WELFARE ACT

By her first issue, Mother contends that the trial court violated ICWA's notice provisions. *See id.*

## A. Standard of Review and Applicable Law

"Proceedings to terminate the parent-child relationship implicate rights of constitutional magnitude that qualify for heightened judicial protection." *In re A.C.*, 560 S.W.3d 624, 626 (Tex. 2018). Pursuant to ICWA, additional substantive and procedural safeguards apply in any state child custody proceeding involving an "Indian child." *See* 25 U.S.C. § 1912(a); *see generally Brackeen v. Haaland*, 994 F.3d 249, 285–86 (5th Cir. 2021) ("In view of the alarming abuses perpetrated through state Indian child custody proceedings, Congress enacted [the] ICWA in 1978."). ICWA defines an "Indian child" as an "unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4). "'Indian tribe' means any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary [of the Interior] because of their status as Indians." *Id.* § 1903(8); *see In re S.J.H.*, 594 S.W.3d 682, 687 (Tex. App.—El Paso 2019, no pet.) ("Texas courts have interpreted this provision to mean that the Indian tribe

must be on the list of Native American tribes legally recognized by the Bureau of Indian Affairs."). Notably, ICWA provides no definition for what constitutes being a "member" or "being eligible for membership." *See* 25 U.S.C. § 1903 (definitions); *see also In re A.H.*, No. 02-21-00402-CV, 2022 WL 1682422, at *7 (Tex. App.—Fort Worth May 26, 2022, no pet.) (mem. op.) (observing the absence).

"[W]here the court knows or has reason to know that an Indian child is involved," ICWA necessitates the application of the following notice provision:

> [T]he party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. . . .

25 U.S.C. § 1912(a); *see* Bureau of Indian Affs. Notice, Guidelines for State Courts, Indian Child Custody Proceedings, 44 Fed. Reg. 67,584 (Nov. 26, 1979) (specifying the procedure for determining the status of an alleged Indian child under ICWA). "The determination by a tribe that a child is or is not a member of that tribe, is or is not eligible for membership in that tribe, or that the biological parent is or is not a member of the tribe is conclusive." *In re A.W.*, 590 S.W.3d 68, 71 (Tex. App.—Texarkana 2019, pet. denied) (cleaned up). We review de novo the trial court's application of ICWA, as we do the question of whether ICWA even applies to the proceeding. *See In re W.D.H.*, 43 S.W.3d 30, 39 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *see also In re A.H.*, 2022 WL 1682422, at *7.

3

**B.      Application**

The Department filed its original petition on July 16, 2021, wherein it noted that Mother denied any Native American tribal affiliation. In reports to the trial court that followed—an August 23, 2021 status report and permanency reports from October 20, 2021, February 1, 2022, March 4, 2022, and May 24, 2022—the Department indicated that Mother denied the children possessed Native American heritage.

On June 1, 2022, less than one month before trial, Mother first notified the trial court of her Indian ancestry during questioning by her counsel at a permanency hearing:

> Q.      So you do have Native American ancestry. Do you know, is there a particular tribe that is connected to it?
>
> A.      It is on my own homeland on Fulton Street. I am a pastor. I do my own rituals. I do my own praying every morning I'm up, every afternoon, every time I go to sleep. I do my own takatas, my own viagas, my own batucuntante. [Phonetic spellings.]
>
> Q.      And this is from what tribe?
>
> A.      Navajo Takarata. [Phonetic spelling.]
>
> Q.      So commonly known as the Navajo tribe?
>
> A.      Yes.

On cross-examination, the Department elicited the following from Mother:

> Q.      Okay. And how—how were you informed that you may have Native American blood?
>
> A.      Because I have a nationality of Indian blood with my mom and my dad.
>
> Q.      Okay. Did you do any genetic testing to determine that?
>
> A.      It's just been what it is with my parents. I claim "other" with my food stamps and anything that needs to be claimed on race.

4

Q.    So you learned about possibly being Native American just from hearing from your parents?

A.    From family. And it's ritual practice.

According to the caseworker, Crystal Alvarado, Mother's testimony ran contrary to information she had previously reported to the Department.

On June 30, 2022, the Department filed an unopposed motion for continuance and to extend the dismissal deadline. Citing Mother's recent tribal affiliation allegations, the Department notified the trial court that an "investigation ha[d] been opened to confirm the children's eligibility for tribal membership pursuant to [ICWA]." In an amended motion for continuance filed on July 1, 2022,[3] the Department informed the court that it had "mailed via certified mail a notice packet under the ICWA to the Navajo Nation" and "anticipate[d] a response from Navajo Nation as to whether the children are eligible for benefits within the next 20 days." On September 27, 2022, the Department advised the trial court that "[t]he Navajo Office of Vital Records was unable to verify the children's eligibility for enrollment based on the ancestry information provided, resulting to [sic] *No Record*." A letter on Navajo Nation letterhead addressed to the Department and dated October 13, 2022, appears in the record and states: "We have been unable to verify the children's eligibility for tribal membership enrollment with the Navajo Nation based on the parent's ancestry provided. Therefore, the intake will be closed with our office and consider the

---

[3] On the same day, the trial court signed an order extending the dismissal date. *See* TEX. FAM. CODE ANN. § 263.401 (permitting the trial court to extend the dismissal deadline).

referral as record information only." No other communications to or from tribal entities are present in the record.[4]

At trial, Alvarado testified that the Department had contacted representatives from the Navajo and Cherokee tribes and received "confirmation that [the family] w[as] not part of any tribe."

On appeal, Mother specifically avers that "the trial court erred in signing the termination order without satisfying ICWA's mandatory notice requirements." However, ICWA provisions only apply to Indian children, and the record before us contains no evidence that either child is an Indian child as defined in the statute. *See* 25 U.S.C. § 1903(4) (defining "Indian child"); *id.* § 1912(a) (limiting its notice requirement to "where the court knows or has reason to know that an Indian child is involved").

---

[4] The Department supplemented the clerk's record during the pendency of this appeal, and in response, Mother filed a motion opposing the Department's supplementation. The supplemented clerk's record contains email correspondence between it and a representative of the Cherokee Nation. In an email dated July 21, 2022, the Department was informed:

> Neither parent nor child are registered as Cherokee Nation tribal citizens. The child is/children are not an "Indian child/ren" in relation to the Cherokee Nation as defined in the Federal ICWA. Cherokee Nation will not be involved based on the information exactly as provided. Any incorrect or omitted information could invalidate this determination. You can expect our official response letter within 30 days. We are working as quickly as possible[;] thank you for your patience! Certified mailed notice is not necessary as there is no Cherokee Nation child and the ICWA does not apply as to us. We will use this email to generate our official response.

Because the email was not admitted as evidence at the time the trial court made its determination, we do not consider it on appeal. *See Hudson v. Aceves*, 516 S.W.3d 529, 539 (Tex. App.—Corpus Christi–Edinburg 2016, orig. proceeding) ("It is axiomatic that an appellate court reviews the actions of the trial court based on the record before the court at the time it makes its ruling."); *see also Rodriguez v. Rodriguez*, No. 13-18-00170-CV, 2019 WL 3331468, at *1 (Tex. App.—Corpus Christi–Edinburg July 25, 2019, pet. denied) (mem. op.) ("Because the [document] was not admitted as evidence when the trial court made its ruling, allowing supplementation now would create a new trial court record. . . . Therefore, we cannot consider the [document]."). We deny Mother's motion to strike the Department's supplementation of the record as moot.

Though Mother testified to her ritualistic tribal practices, there was no evidence that Mother was a member of or that she had applied to or sought to apply to become a member of a federally recognized tribe. *See In re A.W.*, 590 S.W.3d at 71; *see also In re A.H.*, 2022 WL 1682422, at *7 ("ICWA does not apply simply based on an allegation of tribal ancestry; there must be a political relationship with a federally recognized Indian [t]ribe." (quoting *In re R.J.*, No. 12-20-00201-CV, 2020 WL 7042607, at *4 (Tex. App.—Tyler Nov. 30, 2020, pet. denied) (mem. op.))); *In re A.H.*, No. 04-21-00367-CV, 2022 WL 527661, at *3 (Tex. App.—San Antonio Feb. 23, 2022, pet. denied) (mem. op.) (concluding "the notice requirement under [the] ICWA was not triggered" where Mother "testified that she only recently became aware of the possibility that she could apply for membership to a tribe, that she had not yet applied for membership in a federally recognized tribe, and that neither she nor [the subject child] was enrolled in a tribe"). Moreover, according to the Department, representatives of the two tribes expressly indicated that they had utilized Mother's ancestral information in reaching their respective determinations—neither of which indicate that the children are Indian children as defined by § 1903. *See* 25 U.S.C. § 1903(4). Based on this record, we conclude that the trial court had no reason to believe that either child was an Indian child as defined by ICWA.

Therefore, assuming but not deciding that the Department did not provide notice as prescribed by the statute, it is of no import as ICWA's notice requirements were not triggered in this case. *See* 25 U.S.C. § 1912(a); *see also In re A.H.*, 2022 WL 527661, at *3; *In re C.T.*, No. 13-12-00006-CV, 2012 WL 6738266, at *16–17 (Tex. App.—Corpus Christi–Edinburg Dec. 27, 2012, no pet.) (mem. op.) (concluding notice provisions were

not triggered where Mother "did not state that either [her children] or herself were 'members' of an Indian tribe, and she did not state that either child would be 'eligible for membership' in an Indian tribe"); *cf. In re W.D.H.*, 43 S.W.3d 30, 39 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (concluding that the Department complied with the notice requirements of ICWA where a letter from a tribe, determining receipt of notice of proceedings, appeared in the record but a copy of the notice mailed to the tribe was neither filed with the court nor admitted into evidence at the termination hearing).

We overrule Mother's first issue.

## II.    MOTION FOR CONTINUANCE

Mother next challenges the trial court's denial of her counsel's oral motion for a continuance.

Whether the trial court grants or denies a motion for continuance is within its sound discretion. *See In re J.P.-L.*, 592 S.W.3d 559, 574–76 (Tex. App.—Fort Worth 2019, pet. denied); *see also In re B.M.*, No. 13-17-00467-CV, 2017 WL 5953098, at *9 (Tex. App.—Corpus Christi–Edinburg Nov. 30, 2017, pet. denied) (mem. op.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles—that is, if its act is arbitrary or unreasonable. *In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021). Under Texas Rule of Civil Procedure 251, trial courts may not grant a continuance "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." TEX. R. CIV. P. 251; *see J.G. v. Tex. Dep't of Family & Protective Servs.*, 592 S.W.3d 515, 521 (Tex. App.—Austin 2019, no pet.). "A trial court is presumed to have correctly exercised its discretion when it denies a motion that does not comply with the requirements" of this

8

rule. *In re R.F. III*, 423 S.W.3d 486, 490 (Tex. App.—San Antonio 2014, no pet.); *see In re J.P.-L.*, 592 S.W.3d at 575 ("[A] trial court generally does not abuse its discretion when it denies an oral motion for continuance.").

On November 21, 2022, the day the case was called to trial, Mother was in an out-of-county, inpatient substance abuse felony punishment facility, where she had resided since September 21, 2022. Mother complains that the trial court should have granted her counsel's request for a continuance so as to secure her physical presence at trial. It is undisputed, however, that Mother's counsel requested the continuance orally in open court; she did not file a verified motion or affidavit in support; and although Mother had been in custody for several months preceding the trial date, the record contains no written request for a bench warrant, nor is there anything in the record justifying the issuance of a bench warrant under the applicable factors.[5]  *See* TEX. R. CIV. P. 251; *J.G.*, 592 S.W.3d at 522 (overruling claim that petitioner was entitled to continuance by law where he failed to make a request to appear through alternate means and did not provide factual

---

[5] The Texas Supreme Court recognizes several factors relevant in the determination of whether to grant an inmate parent's request for a bench warrant:

> the cost and inconvenience of transporting the prisoner to the courtroom; the security risk the prisoner presents to the court and public; whether the prisoner's claims are substantial; whether the matter's resolution can reasonably be delayed until the prisoner's release; whether the prisoner can and will offer admissible, noncumulative testimony that cannot be effectively presented by deposition, telephone, or some other means; whether the prisoner's presence is important in judging his demeanor and credibility; whether the trial is to the court or a jury; and the prisoner's probability of success on the merits.

*In re Z.L.T.*, 124 S.W.3d 163, 165–66 (Tex. 2003); *see also In re A.T.M.*, No. 13-21-00008-CV, 2021 WL 2584402, at *8 (Tex. App.—Corpus Christi–Edinburg June 24, 2021, no pet.) (mem. op.) ("Even if [Father] had . . . moved for the issuance of a bench warrant, he has not shown that the trial court would have erred in denying such a motion."); *In re T.R.C. Jr.*, No. 13-11-00616-CV, 2012 WL 3537828, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 16, 2012, no pet.) (mem. op.) (concluding the trial court did not abuse its discretion by implicitly denying a request for a bench warrant where Father "presented no factual information that would have enabled the trial court to balance all of the . . . factors").

information demonstrating why his personal appearance via alternate means was necessary); *see also In re B.M.*, 2017 WL 5953098, at *9 (concluding there was no abuse of discretion where "Mother requested the continuance in open court, it was not verified by affidavit, and it was opposed by the Department and the attorney ad litem"); *In re R.R.C.*, No. 04-17-00043-CV, 2017 WL 2562377, at *3–4 (Tex. App.—San Antonio June 14. 2017, no pet.) (mem. op.) (concluding same where petitioner failed to make written motion supported by affidavit showing materiality of his testimony and failed to make record justifying his appearance under the considered factors). We conclude the trial court did not abuse its discretion in denying Mother's oral request for a continuance.[6] We overrule Mother's second issue.

### III. CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Delivered and filed on the
6th day of April, 2023.

---

[6] Mother's counsel did not raise a due process challenge in the trial court. Thus, to the extent that Mother makes such argument on appeal, the issue has not been preserved. *See* TEX. R. APP. P. 33.1(a); *In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003) (requiring complaints of such due process violations to be raised and ruled on in the trial court in order to be preserved for appeal); *see also In re M.N.R.*, No. 04-22-00025-CV, 2022 WL 2230928, at *2 (Tex. App.—San Antonio June 22, 2022, no pet.) (mem. op.) (concluding Mother did not preserve due process complaint where, "[a]fter the trial court overruled the 'not ready' announcement and denied [her] continuance, counsel for Mother did not raise any due process or due-course-of-law objection to the trial court's ruling or otherwise make the trial court aware of a constitutional complaint based on continuation of the proceeding without Mother's presence").

10